Allen J. MEIER, Labor Commissioner, Appellant,

v.

SAC AND FOX INDIAN TRIBE OF the MISSISSIPPI IN IOWA, Appellee.

No. 90–1135.

Supreme Court of Iowa.

Oct. 16, 1991.

Gail A. Sheridan–Lucht, Atty. for Labor Comm'r, Des Moines, for appellant.

Roger Schoell of Grimes, Buck, Schoell & Beach, Marshalltown, for appellee.

Considered by HARRIS, P.J., and SCHULTZ, CARTER, LAVORATO, and SNELL, JJ.

LAVORATO, Justice.

The issue in this small claims action is whether the district court has jurisdiction to entertain a private civil action brought against a Native American tribe that asserts sovereign immunity. We think not. We therefore affirm the district court decision.

## I. *Background Facts and Proceedings.*

Nancy Fauser, a Caucasian, entered into a contract of employment with the Sac and Fox Tribe of the Mississippi in Iowa (the Tribe) in 1987. Her title was Indian Health Services Director, and she performed her services on the Tama county settlement.

Later, a dispute arose between Nancy and the Tribe over payment of past due wages for work performed. After determining that Nancy's claim was enforceable, the Iowa division of labor (the Division) filed a small claims action on Nancy's behalf. *See* Iowa Code ch. 91A (1989). The demand was for wages due, liquidated damages, attorney fees, and costs.

The Tribe moved to dismiss, claiming sovereign immunity from suit in state court under federal law. The Division resisted that motion, claiming that the district court has subject matter jurisdiction over the Tribe under both federal and Iowa law.

Following a hearing on the motion to dismiss, the small claims court ruled that state courts have jurisdiction to hear this kind of action. The court then set a hearing date on the matter.

At the hearing on the merits, the small claims court entered a default judgment against the Tribe because no one appeared for it.

The Tribe immediately appealed from the small claims judgment, reasserting lack of subject matter jurisdiction under federal law. The Division resisted that motion, again arguing that federal and Iowa law grant the district court subject matter jurisdiction over the Tribe in private civil actions.

Following oral arguments, the district court reversed the small claims court judg-ment. The court also sustained the Tribe's motion to dismiss for lack of subject matter jurisdiction. In its ruling, the district court found lack of waiver or consent by the Tribe.

It is from this ruling that the Division appeals. The Division seeks a reversal and reinstatement of the small claims court decision. In the alternative, the Division seeks a reversal and remand to the district court for rehearing.

In this small claims action our scope of review for an action at law is for correction of errors at law. *Witcraft v. Sundstrand Health & Disability Group Benefit Plan,* 420 N.W.2d 785, 787 (Iowa 1988); Iowa R.App.P. 4.

## II. *The Jurisdictional Issue.*

The issue here is whether the district court possesses jurisdiction to adjudicate private civil claims against a Native American tribe when the tribe asserts sovereign immunity.

At the outset we make some observations about Native American law. Generally, Native American law has developed through a series of conflicting and confusing cases. The results are not uniform. As the United States Supreme Court has recognized, "generalizations on this subject have become particularly treacherous." *Mescalero Apache Tribe v. Jones,* 411 U.S. 145, 148, 93 S.Ct. 1267, 1270, 36 L.Ed.2d 114, 119 (1973).

The Division alleges that the district court erred in determining a lack of subject matter jurisdiction over the Tribe. It relies on federal and state statutes and the common law for support. For reasons that follow, we hold that in private civil cases no subject matter jurisdiction exists over the Tribe, absent express consent or waiver by it or Congress.

Preliminarily, we note that subject matter jurisdiction is "the authority of a court to hear and determine cases of the general class to which the proceedings in question belong, not merely the particular case then occupying the court's attention."

*Christie v. Rolscreen Co.,* 448 N.W.2d 447, 450 (Iowa 1989) (quoting *Wederath v. Brant,* 287 N.W.2d 591, 594 (Iowa 1980)).

The district court had subject matter jurisdiction here because the Iowa Code grants such jurisdiction over wage disputes. *See* Iowa Code § 91A.10 ("The commissioner ... shall ... commence a civil action in any court of competent jurisdiction to recover for the benefit of any employee any wage and liquidated damages' claims that have been assigned to the commissioner for recovery.")

■ A court may have subject matter jurisdiction over a general class of cases, yet may not be able to entertain the particular case. *Christie,* 448 N.W.2d at 450. That is what happened here. While the district court possesses the general authority to hear wage disputes, it is precluded from doing so when a defendant Native American tribe asserts sovereign immunity. *See Hyde v. Buckalew,* 393 N.W.2d 800, 802 (Iowa 1986). (Assertion of sovereign immunity is a matter of jurisdiction, which may be raised by a motion to dismiss at any stage of the proceeding.)

A. *Statutory authority.* We have visited the general history of Native American law before and do not repeat it here. *See State ex rel. Dep't of Human Serv. v. Whitebreast,* 409 N.W.2d 460 (Iowa 1987). Our starting point on the historical spectrum is 1953.

The Division claims that Iowa was given the chance to accept some civil jurisdictional power over Native Americans in 1953 when Congress passed the Act of August 15, 1953, popularly known as "Public Law 280." *See* Pub.L. No. 83–280, § 4, 67 Stat. 588 (codified as amended at 25 U.S.C. § 1322). The following passage is relevant to our discussion:

> The consent of the United States is hereby given to any State not having jurisdiction over civil causes of action *between Indians or to which Indians are parties* which arise in the areas of Indian country situated within such State....

25 U.S.C. § 1322(a) (1988) (emphasis added).

Although Iowa was not among the original states receiving this Congressional delegation of jurisdiction, the Act and its amendments allowed for future assumptions of civil jurisdiction by all other states. *See* 25 U.S.C. § 1323(b) (1970), formerly Act of August 15, 1953, ch. 505, § 7, 67 Stat. 590; F. Cohen, *Handbook of Federal Indian Law* 176 (1982 ed.). Iowa accepted Congress' invitation by passing Iowa Code section 1.12 in 1967:

> The state of Iowa hereby assumes jurisdiction over civil causes of actions *between Indians or other persons or to which Indians or other persons are parties* arising within the Sac and Fox Indian settlement in Tama county. The civil laws of this state shall obtain on the settlement and shall be enforced in the same manner as elsewhere throughout the state.

(Emphasis added.)

The Division contends that the operation of section 1.12, enabled by Public Law 280, gives the district court jurisdiction over the Tribe in private civil causes of action. It further suggests that a broad grant of civil jurisdiction was the intent of the legislature in crafting section 1.12. For two reasons, we cannot agree with either premise.

■ First, the language of Public Law 280 and section 1.12 clearly confers narrow civil jurisdiction over individual Native Americans, and not the Tribe per se. The United States Supreme Court has recognized this distinction in interpreting the limited scope of Public Law 280's successor statute, the Indian Civil Rights Act of 1968. *See* 25 U.S.C. §§ 1301–26 (1968); *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 59, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106, 115 (1978) (finding nothing on the face of the Act subjecting tribes to the jurisdiction of the federal courts in civil actions for injunctive or declaratory relief; suits against tribes under the Act are barred by sovereign immunity).

■ Second, when the language of a statute is plain and its meaning is clear—as in Public Law 280 and Iowa Code section

1.12—we should not reach for meaning beyond its express terms. *State v. Landals,* 465 N.W.2d 660, 662 (Iowa 1991). Nor should we resort to rules of statutory construction. *Elliott v. Iowa Dep't of Public Safety,* 374 N.W.2d 670, 672 (Iowa 1985).

That brings us to the common law assertion.

■ B. *Common law authority.* The Division's fallback position is the common law. The Division cites several modern United States Supreme Court decisions granting the state jurisdiction over private civil causes of action involving Native Americans. Emerging from these cases are several tests the United States Supreme Court employs to balance the interests of the state against those of the Native Americans. If the state interest is greater and does not encroach on Native American interests, the state may act. The Division contends a balancing test should be employed here. Again, we think not.

In all of the Division's citations where assertion of jurisdiction was successful, the defendants were individuals: Native American(s) or non-Native American(s). In no case where jurisdiction was granted was a *tribe* a defendant. The United States Supreme Court has recognized this dichotomy. *See Puyallup Tribe, Inc. v. Washington Dep't of Game,* 433 U.S. 165, 173, 97 S.Ct. 2616, 2621, 53 L.Ed.2d 667, 674 (1977) (holding that portions of state court order on remand of cause involving relief against tribe itself was an infringement on the tribe's sovereign immunity, to which neither the tribe nor Congress consented; portions of order relating to the tribe vacated).

The Division relies heavily on the infringement test articulated in *Williams v. Lee,* 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959). Rejecting application of the infringement test to a sovereign immunity issue one court aptly observed:

> The inherent weakness in [the appellant's argument] is that the infringement test applies to *individual Indians* and is inapplicable to the exercise of state court jurisdiction over an Indian *tribe* that has invoked its sovereign immunity.

*Padilla v. Pueblo of Acoma,* 107 N.M. 174, 178, 754 P.2d 845, 849 (1988), *cert. denied,* 490 U.S. 1029, 109 S.Ct. 1767, 104 L.Ed.2d 202 (1989) (emphasis added). *See Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe,* 498 U.S. ——, ——, 111 S.Ct. 905, 909–10, 112 L.Ed.2d 1112, 1119–21 (1991) (rejecting state's invitation to modify or abandon the long-established principle of tribal sovereign immunity because Congress has consistently reiterated its approval of the doctrine; suits against tribes are barred by sovereign immunity absent a clear waiver by the tribe or Congress).

Further, the Division does not argue and we do not find that the Tribe or Congress in any way waived or consented to jurisdiction by the district court.

### III. *Lack of Remedy.*

The Division asserts that if the Tribe cannot be brought into state district court, Nancy will be left with a right but no remedy. That may be so but such a result is a harsh reality of sovereign immunity. *Cf. Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Eng'g,* 476 U.S. 877, 893, 106 S.Ct. 2305, 2314, 90 L.Ed.2d 881, 895 (1986) (the perceived inequity of permitting a tribe to recover from a non-Native American for civil wrongs in cases where a non-Native American allegedly cannot recover against a tribe simply must be accepted in light of the overriding federal and tribal interests presented, much in the same way that the perceived inequity of permitting the United States or a state to sue in cases where they could not be sued as defendants because of their sovereign immunity must also be accepted).

### IV. *Disposition.*

Neither statutory nor common law grants the district court civil jurisdiction over the Tribe in a private action. Absent express Congressional or tribal waiver or consent, the authority to resolve the Division's claim lies solely with the Tribe. This is so because (1) Public Law 280 and Iowa Code section 1.12 grant the state civil jurisdiction limited to suits arising on the settle-

ment and involving individual Native Americans, (2) the common law balancing tests apply only to actions involving individual Native Americans, and (3) the defendant is a Native American tribe.

Because we find no statutory nor common law grant of jurisdiction over the Tribe to the district court, we affirm the district court decision.

AFFIRMED.